Nelson, J.,
delivered the opinion of the Court.
By the Act of November 26th, 1867, chapter 90, Acts of 1867-8, p. 375, the Thirteenth Chancery Division, the N ineteenth Judicial Circuit, and a Judicial Criminal District were established; the latter created by sections 5 to 11, both inclusive, and composed of Johnson, Carter, and eight other counties. The Act was repealed, so far as it related to the counties of Jefferson, Grain-ger, Cocke and Claiborne, by the Act of February 25th, 1868, c. 49, Acts of 1867-8, p. 60, and the circuit was composed of Johnson, Carter, Washington, Sullivan, Hawkins, Hancock and Greene counties, though the county of Hancock is not mentioned in the first section of the. repealing Act. Section 10 of the Act first recited, provided for the election of Judge of the Criminal Court, on the first Thursday of Feb., 1868, which -was changed to the third Thursday of April, 1868, by section 3 of the last named Act, *545 which embraces Hancock as one of the counties. On the 2d of September, 1869, a bill was filed in the Criminal Court of Hancock County, in the name of the State of Tennessee, by A. H. Pettibone, her Attorney-general, against the defendants, for the purpose of setting aside various fraudulent conveyances alleged to have been made by each of them, and of obtaining satisfaction of a judgment recovered, on motion, in the name of the State, in said Criminal Court, on the 22d December, 1868, against Jesse Alder, former tax Collector, and John Couch and others, his securities, for $1,001.35 and costs. On the the 26th August, 1869, a fiat directed to the Clerk of the Criminal Court of Hancock County, was granted by “A. W. Howard, Judge,” <ftc., in which it was directed that process should issue as prayed for in the foregoing bill, “in the nature of an equity proceeding, and without security.” Demurrers, for want of jurisdiction, were filed to the bill, on the 18th January, 1870, which seems to have been allowed, on the next day, in the Circuit ■ Court of Hancock County, and the bill was dismissed with costs; and from this decree the Attorney General prayed an appeal to this Court, which was granted.
How the ease was transferred from the Criminal to the Circuit Court, or who presided in the latter, does not appear from the transcript; but it may be inferred that the case was transferred to the Circuit Court under the Act of November 5th, 1869, c. '40, s. 167, by which the Act creating the Criminal Court was repealed, and the causes pending in the Criminal Courts transferred to the Circuit Courts of the .counties, respectively, *546 for trial, and by which it -was declared that the records of said Criminal Court shall constitute a part of the records of said Circuit Court.
The matter to be determined, upon the demurrers, is, whether the Criminal or Circuit Courts could entertain jurisdiction of the cause; and we are clearly of opinion that they could not. However vague and indefinite the Act of November 26, 1867, may be in other respects, it is manifest that the intention was to establish a Criminal Court, with exclusive criminal jurisdiction. It is true, that, by section 5, it is directed that courts shall be held, “having exclusive jurisdiction of all cases to which the State is a party, or which, by the laws now in force, require the services of an Attorney General,” but in that section the district is styled, “a judicial criminal district; and in section 7 it is made the duty of the Attorney General of the circuit in which any one of the counties may be included, “to attend the sittings of said Criminal Court, and to prosecute the pleas of the State, and to represent her interests” — the pleas of the State, like the pleas of the Crown, ordinarily referring to matters criminal. 4 Black. Com., p. 2, m.
Hull power is conferred upon the Criminal Court, by section 8, “to take any forfeiture or any recognizance bond, subpoena, or any action, or any other proceeding of the Circuit Court, which said Circuit Court might have taken had the jurisdiction of such court remained in said Circuit Court;” and this, together with the appointment of jurors in the next section, would seem to indicate that the intention was to confer upon the Criminal Court the same jurisdiction which was entertained *547 by the Circuit Courts in criminal causes, and nothing more.
The' Circuit Courts were not clothed, at the date of said Act, nor are they now, with any jurisdiction over a chancery case like this; and, as it is to he regretted that all proceedings of an equitable nature are not exclusively confined to the more appropriate jurisdiction of that tribunal, whose peculiar province it is to determine equitable causes, we dó not feel disposed, by construction, to extend the jurisdiction of any court of law to cases of purely equitable cognizance. Such jurisdiction, when conferred, must rest upon, a clear expression of legislative will, in accordance with the powers conferred by the Constitution.
The expression in the fifth section, “all cases to which the State is a party,” means, in view of the subject matter of the Act, criminal causes; and the further expression, “which by the laws now in force require the services of an Attorney General,” refers- to criminal prosecutions, as Ave are not aware ■ of any statute conferring upon Attorneys General unlimited power to commence suits, generally in the name‘of the State, in the Chancery Courts. No such power is conferred in the Code, Ft. 3, Tit. 4, c. 3, pp. 711, 713, defining the duties of District Attorneys. They are there directed to prosecute in behalf of the State, in every case in which the State is a party, or in anywise interested; to move for judgments against Sheriffs, Collectors, Clerks and Justices in certain cases; to prosecute all motions against Tax Collectors, and to prosecute any person violating the iwenue laAvs, and to perform the specified duties; but *548 the power to commence suits in Chancery, in the name of the State, is not conferred; and doubts may well be entertained whether this discretionary power is even conferred upon the Attorney General for the State in sections 3952, 3960. The Legislature has frequently instructed the Attorney General to bring particular suits; and this power was exercised in the Act of May, 4, 1865, c. 9, p. 26, in directing suits to be brought against certain parties and their securities; and without determining that the Attorney General for the State, or the District Attorneys General, cannot bring suits, in the name of the State, except where they are expressly authorized by general statute or specific instructions by the Legislature; we think the definition of jurisdiction in the said fifth section is too general and uncertain in its nature to ■ confer Chancery jurisdiction on a Criminal Court. In Dwarris on Statutes, 7 Law Lib., 766, m., it is said ■that “where a statute directs a penalty to be recovered by action, bill, plaint or information, in any court of record, the courts intended by the statutes, propter excel-lentiam, are the four courts of record at 'Westminister,” and it would seem to follow that, in construing this statute, the Legislature, is to be- presumed, in the absence of anything to the contrary, to intend that remedies shall be resorted to in the appropriate tribunals which it has created. See, also, Sedgwick on Stat. and Con. Law, 60.
Affirm the decree.